UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE STUDER GROUP, LLC, | ) | CASE NO.  1:10CV1957 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| CLEVELAND CLINIC FOUNDATION, | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

    This matter comes before the Court upon the Motion (ECF DKT #169) of Plaintiff, The Studer Group, LLC ("Studer"), for Summary Judgment as to Counterclaims of Defendant, The Cleveland Clinic Foundation ("CCF").  For the following reasons, the Motion is granted in part.  The claims that are not dismissed are referred to AAA arbitration pursuant to the parties' contract.  The captioned case is stayed and removed from the active docket, pending the conclusion of arbitration.

**I. BACKGROUND**

    Studer initiated this lawsuit on September 2, 2010.  On September 29, 2010, Studer

filed its First Amended Complaint, seeking declaratory relief against CCF, and alleging that in 2006, Studer and CCF entered into a Strategic Alliance Agreement ("Agreement"), granting Studer the exclusive right to market, distribute, license and service CCF's Discharge Callback Program.  The Agreement, dated January 30, 2006 and amended May 8, 2006, terminated by its own terms on January 30, 2009.  Following that, Studer developed its Patient Call Manager Product.  In its Complaint, Studer seeks a Declaratory Judgment, declaring the parties' rights under the Agreement regarding intellectual property and regarding monies due for distribution, licensing and sales of the Discharge Call Manager, and declaring that Studer's Patient Call Manager Product is non-infringing.

On October 18, 2010, CCF filed its Answer to the First Amended Complaint and Counterclaims.  CCF seeks an accounting and indemnification, and alleges:

**Count I - Copyright Infringement**

CCF registered a copyright in the Discharge Call Manager software program on September 20, 2010; and CCF alleges it is the owner of all right, title and interest in and to the copyrights in the Discharge Call Manager.  CCF alleges that Studer copied the Discharge Call Manager when creating the Patient Call Manager; the copying and distributing were unauthorized; and the acts constituted copyright infringement.

**Count II - Trade Secret Misappropriation**

CCF alleges Studer used CCF's trade secrets in its Discharge Call Manager system and software program to create its infringing Patient Call Manager software program and disclosed CCF's trade secrets without authorization by marketing, selling,and disclosing the Patient Call Manager software to customers, without first obtaining executed obligations of

confidentiality and non-disclosure (i.e., signed end-user agreements).

**Count III - Breach of Contract**

CCF alleges Studer breached Section 12, Section 4, Section 10, Section 18 and Section 13 of the Strategic Alliance Agreement; and CCF has suffered damages in an amount to be proven at trial.  CCF also seeks injunctive relief, enforcing the Agreement and barring Studer from making, selling, licensing or distributing the Patient Call Manager and from disclosing confidential and trade secret information related to the Discharge Call Manager software program and system.

**Count IV - Conversion**

CCF alleges that it owns all right, title and interest in the Discharge Callback Program and that Studer has wrongfully exercised dominion over the system belonging to CCF, inconsistent with and in denial of the rights of CCF.

**Count V - Federal Unfair Competition under Lanham Act, 15 U.S.C. § 1125(a)**

Studer's marketing, selling and distribution of the infringing Patient Call Manager falsely represents that Studer is the sole author and creator; is an unlawful attempt to trade off of CCF's goodwill; and creates a likelihood of customer confusion.  CCF seeks Studer's profits, treble actual damages, costs and attorney fees.

**Count VI - Violation of Ohio Deceptive Trade Practices Act**

CCF alleges same violations as set out in Count V.

**Count VII - Unfair Competition at Ohio Common Law**

CCF alleges same illegal conduct as set out in Count V.

**Count VIII - Accounting**

In the alternative, CCF alleges that CCF and Studer are "joint legal and/or beneficial owners of the Discharge Call Manager system and software program, including the copyrights and trade secrets to the same." Co-owners of a copyright must account to the other co-owners for a ratable share of any profits earned from using or licensing the copyright. CCF claims it is entitled to an accounting and payment from Studer of that portion of its profits after termination of the Strategic Alliance Agreement and future profits, traceable to its use of the Discharge Call Manager or any part thereof during the term of the copyright.

**Count IX - Indemnification**

CCF alleges it has suffered losses, damages and expenses, including attorneys' fees, as a result of Studer's breach of the Strategic Alliance Agreement; and pursuant to Paragraph 9, Studer is obligated to indemnify and hold CCF harmless.

On December 16, 2013, Studer filed its Motion for Summary Judgment on CCF's Counterclaims. CCF filed its Opposition Brief on January 15, 2014. Studer's Reply Brief was filed on January 29, 2014.

## II. LAW AND ANALYSIS

**Standard of Review**

A summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must do

so by either pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or by "showing that the materials cited (by the adverse party) do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." See Fed.R.Civ.P. 56(c)(I)(a), (b). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Applicable law**

A federal court sitting in diversity must apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir.2000). In this case, Ohio law governs under that general principle and also because the Agreement at Section 27 recites in part: "The validity, construction, and enforceability of this Agreement shall be governed in all respects by the law of the state of Ohio."

**Contract Interpretation**

The Court interprets the contract as a whole. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 219 (2003). "If the language used by the parties [in a contract] is plain, complete, and unambiguous, the intention of the parties must be gathered from that language, and from that language alone." Williston on Contracts § 31:4. Whether a contract is ambiguous is a matter of law for the Court. *Latina v. Woodpath Dev. Co.*, 57 Ohio St.3d 212, 214 (1991). Any ambiguity must appear on the face of the contract; and extrinsic evidence cannot render an otherwise unambiguous contract provision ambiguous. *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 638 (1992). "When the terms of the contract are clear and unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Id*. In a fully integrated agreement, intentions not expressed in the writing are deemed to have no existence, and may not be shown by parol evidence. *Construction Interior Systems, Inc. v. Marriott Family Restaurants, Inc.*, 984 F.2d 749, 754 (6th Cir. 1993) (quoting *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51 (1989)) (interior citations omitted).

Specifically in the Agreement (ECF DKT #167-1) before us, CCF and Studer acknowledge in **Section 26. Entire Agreement**: "This Agreement and the attached Schedules set forth the entire understanding of, and supersedes and revokes all prior agreements between the parties relating to the subject matter contained herein and merges all prior discussions between them."

**Arbitration**

The Federal Arbitration Act ("FAA") 9 U.S.C. §§ 1, *et seq*. (2003) provides that an arbitration clause in a "transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA further mandates that when the Court is "satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The FAA establishes a liberal policy favoring arbitration agreements, and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation. See *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir.2003). "A central purpose of the FAA is 'to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA requires courts to "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). This policy was recently reinforced by the Sixth Circuit, compelling arbitration even after the contract expired. *Huffman v. Hilltop Companies, LLC*, — F.3d —, 2014 WL 1243795 (C.A.6 (Ohio) March 27, 2014). "[A]n order to arbitrate the particular

grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id*. (citing *Litton Financial Printing Division, Litton Business Systems, Inc. v. NLRB*, 501 U.S. 190, 209 (1991)).

Nonetheless, the Court must ascertain whether the parties agreed to arbitrate the dispute at issue. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, *Inc.*, 473 U.S. 614, 626 (1985). A party cannot be required to arbitrate any dispute if the party has not agreed to do so. *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582 (1960). The FAA does not confer an absolute right to compel arbitration, but only a right to obtain an order directing that "arbitration proceed in the manner provided for in [the parties'] agreement." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 469 (1989).

**Strategic Alliance Agreement**

In the summary judgment briefing, both Studer and CCF rely upon the terms of the Strategic Alliance Agreement (ECF DKT #167-1), dated January 30, 2006 and amended May 8, 2006, and executed by Michael P. O'Boyle, Chief Operating Officer, on behalf of CCF and by Barry G. Porter, President, on behalf of Studer. Both CCF and Studer acknowledge that the Agreement terminated by its own terms on January 30, 2009.

Notably, the Court finds that the terms and provisions of the Agreement are not only relevant, but controlling, in its analysis. Therefore, the Court will discuss the pertinent language of the Agreement and the parties' allegations where appropriate.

The opening "Whereas" clauses recognize the *mutual* contributions of each

organization, and set forth that CCF *and* Studer developed a system and program, listed on Exhibit A and incorporated by reference.  That system is the Discharge Callback Program; and, according to Exhibit A and under the heading **Ownership**: "*Discharge Callback Program is hereby deemed Joint Intellectual Property*."  (Emphasis added).

As discussed earlier, CCF registered a copyright for the Discharge Call Manager software program on September 20, 2010.  In the Factual Background supporting its Counterclaims, CCF specifically states at ¶ 16: "Under the Agreement, Studer was to act as the exclusive distributor to market, distribute, license, and service the *Discharge Callback Program and system, known as the Discharge Call Manager*, during the term of the Agreement.  (Emphasis added).  (ECF DKT #95).

Section 8 defines Intellectual Property; and Joint Intellectual Property means: **"individually and collectively all inventions, improvements or discoveries, including patent, copyright and trademark rights, which are made jointly by one or more employees of Studer and one or more employees of CCF under the Agreement.  <u>All rights and title to Joint Intellectual Property shall be jointly owned by Studer and CCF.</u>"**  (Emphasis added).

Section 9 is entitled Indemnification, and it provides:

Each party agrees that it will indemnify, defend and hold harmless the other party, its officers, directors, employees and agents from any and all losses, claims, damages, expenses and causes of action of every nature whatsoever, including attorneys' fees, which are caused by (a) the breach of this Agreement by that party or, (b) any acts or omissions (c) any failure by that party to perform any obligation under this Agreement including but not limited to any failure to obtain executed EULAs; (d) any representations or warranties made by that party except as provided herein; or (e) any damages or claims resulting from the termination or expiration of this Agreement.

Section 18 covers Confidentiality/Trade Secrets and the parties set out *mutual* obligations as follows:  "Studer agrees that all confidential information received from CCF, including without limitation all technical information and service manuals received in training sessions, is and shall remain the property, trade secret and confidential information of CCF. Similarly, CCF agrees that all confidential information received from Studer is and shall remain the property and confidential information of Studer."

Section 19 is the Dispute Resolution provision, which states in part:

> The Parties shall attempt in good faith to promptly resolve *any dispute arising out of or relating to payments required under this Agreement* between representatives who have authority to settle the controversy within thirty - (30) days of one party notifying the second party of such dispute in writing. If the matter pertaining to payments has not been resolved by negotiation within thirty - (30) days, the parties shall attempt in good faith to settle the dispute by mediation under the then-current rules of the American Arbitration Association ("AAA")...
>
> If the matter has not been resolved by mediation within ninety - (90) days of the initiation of such procedure, or if either party does not participate in mediation in good faith, the dispute shall be settled by arbitration before a tribunal of three arbitrators in a location mutually agreeable to both parties in accordance with the rules of the AAA. . . . *Any claim, dispute, or controversy that does not concern payments, including concerning the validity, enforceability, or infringement of any intellectual property rights contained in the rights licensed hereunder shall be resolved in any court having jurisdiction thereof.*

(Emphasis added).

Section 26 is the integration clause which the Court previously recited with regard to contract interpretation.

Section 29 is captioned Survival. It states: "Sections 8, 9 10, 17, 18, 19, 21, Revenue Sharing in any exhibit for any product considered hereafter attached shall survive termination or expiration."  For the sake of clarity, the surviving Sections are Intellectual Property,

Indemnification, Customer's Term, Compliance with License and Laws, Confidentiality/Trade Secrets, Dispute Resolution and Relationship of Parties.

In the Court's view, determining the merits of Studer's Motion for Summary Judgment and the designation of matters to be litigated and matters to be arbitrated, turns upon the concept of ownership. Although the parties direct the Court's attention to declarations, affidavits, deposition testimony and expert reports, the Court need look no further than the plain language within the "four corners" of the Strategic Alliance Agreement.

Pursuant to the Agreement, all rights and title to Joint Intellectual Property shall be jointly owned by Studer and CCF. The Discharge Callback Program is defined as Joint Intellectual Property. The Intellectual Property provision (Section 8) survives termination or expiration of the Agreement. CCF, itself, admits that the Discharge Callback Program and system is known as the Discharge Call Manager. (Answer to First Amended Complaint and Amended Counterclaims, ECF DKT #95 at ¶ 16). On September 20, 2010, CCF registered a copyright for the Discharge Call Manager. However, it logically follows that Studer is a joint owner of the Discharge Call Manager.

In order to establish a copyright infringement claim, a party must prove that he had ownership of a valid copyright and that another person copied a protected interest in the work. *Coles v. Wonder*, 283 F.3d 798, 801 (6th Cir. 2002); see also, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991). Pursuant to 17 U.S.C. § 501(a), an infringement claim may only be brought against someone who violates "the *exclusive* rights of the copyright owner." (Emphasis added). "The authors of a joint work are coowners of copyright in the work." 17 U.S.C. § 201(a). An owner does not have rights exclusive of a co-owner's; so, no claim of

infringement can lie against a co-owner." *Severe Records v. Rich*, 658 F.3d 571, 582 (6th Cir. 2011) (citing Zuill *v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996)). Each co-owner has an undivided interest in the whole work; and has an independent right to use the work, subject to a duty of accounting to the other co-owners for any profits. See Notes of Committee on the Judiciary, H.R. Rep. No. 94-1476; *Zuill*, 80 F.3d at 1369.

The Court finds that Studer and CCF are co-owners (joint owners) of the copyrighted work, Discharge Call Manager. Therefore, no claim of Copyright Infringement could lie against Studer. Studer is entitled to judgment in its favor on Count I of CCF's Counterclaim.

In Count II of its Counterclaim, CCF alleges that "Studer used CCF's trade secrets in its *Discharge Call Manager* system and software program, without CCF's authorization, to create its infringing *Patient Call Manager* software program." (ECF DKT #95, ¶ 36). However, since Studer jointly owned the Discharge Call Manager system with CCF, Studer could not misappropriate its own secrets. Studer is entitled to judgment in its favor on Count II of CCF's Counterclaim.

Count IV is CCF's claim for conversion against Studer. Conversion is the "wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St.2d 224, 226 (1976). At ¶ 61, CCF alleges: "CCF owns all right, title, and interest in the *Discharge Callback Program*, which is defined in the Strategic Alliance Agreement as '[a] system that automates the process for making follow up phone calls to recently discharged patients.'" The Court finds it puzzling how CCF can make this assertion of sole ownership when the unambiguous language of the Agreement says,

"**Ownership**: Discharge Callback Program is hereby deemed Joint Intellectual Property." Because Studer is a joint owner, its possession of, or control over the system is not wrongful and is not conversion. Summary Judgment is granted on behalf of Studer on Count IV of the Counterclaim.

CCF alleges Breach of Contract in Count III; and seeks damages for the breach of Sections 4, 10, 12, 13 and 18 of the Agreement. At the outset, the Court questions whether the majority of these provisions survived the expiration of the Agreement. In any event, CCF can, if it prevails, be compensated with money for these contractual violations. Moreover, applying this Court's reasoning on copyright and ownership, Count III does not raise disputes "concerning the validity, enforceability or infringement of any intellectual property rights." Rather, it is likely that an arbitrator could determine that Count III is a "dispute arising out of or relating to payments required under this Agreement;" and thus, should be arbitrated and not resolved judicially, in accordance with the parties' intentions in Section 19. CCF additionally claims to be entitled to injunctive relief enforcing the provisions of the Agreement. However, the Court holds that CCF has failed to provide clear and convincing evidence of entitlement to an injunction, because Studer is a joint owner of the intellectual property and trade secrets at issue.

Count V - Federal Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a); Count VI - Violation of the Ohio Deceptive Trade Practices Act; and Count VII - Unfair Competition at Ohio Common Law are all analyzed the same because the "likelihood of confusion" about the origin or sponsorship of the discharge program and software is central to all three. *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111,1122-

23 (6th Cir. 1996); *Procter & Gamble Co. v. Georgia-Pacific Consumer Prods*. LP, No. 1:09-cv-318, 2009 WL 2407764, at *3 (S.D.Ohio Aug. 3, 2009). As a co-owner, with an independent right to use the copyrighted system, subject only to a possible accounting of profits, Studer has no liability under Counts V, VI or VII.

As to Count VIII , the claim for an accounting, the Court believes that CCF's alternative pleading has merit. That is, CCF alleges that "[i]n the alternative, the Parties are joint legal and/or beneficial owners of the Discharge Call Manager system and software program, including the copyrights and trade secrets to the same" . . . and CCF may be "entitled to an accounting and payment from Studer" of a portion of its profits. (ECF DKT #95, ¶¶ 89 & 92). As this can be construed as a "dispute arising out of or relating to payments required under this Agreement," Count VIII is referred to arbitration pursuant to Section 19 of the Agreement.

In Count IX, CCF alleges that it "has suffered losses, damages, and expenses, including attorneys' fees, as a result of Studer Group's breach of this Strategic Alliance Agreement. Pursuant to paragraph 9 of the Strategic Alliance Agreement, Studer Group is obligated to indemnify and hold CCF harmless." The Court denies CCF's request for relief at this juncture. The Court will entertain a motion regarding reasonable fees and expenses as to either CCF or Studer, if appropriate, after completion of the arbitration process.

### III. CONCLUSION

Studer and CCF are sizeable commercial enterprises, presumably possessing a high degree of sophistication in matters of contract. Each is capable of retaining competent counsel, skilled in negotiating and/or drafting contract terms and advising on the specific

consequences of agreements governing intellectual property.  Therefore, the Court holds both parties to the plain, unambiguous terms of their contract and to the language of their pleadings; and "will not in effect create a new contract by finding an intent not expressed there."  *Shifrin*, 64 Ohio St.3d at 638.

For these reasons, the Motion (ECF DKT #169) of Plaintiff, The Studer Group, LLC ("Studer"), for Summary Judgment as to Counterclaims of Defendant, The Cleveland Clinic Foundation ("CCF") is granted in part.  Judgment is granted in favor of Studer on Counts I, II, IV, V, VI and VII.  Judgment is denied as to Counts III, VIII and IX.  Those claims are referred to AAA arbitration pursuant to Section 19 of the Parties' Strategic Alliance Agreement.  The captioned case is stayed and removed from the active docket, pending the conclusion of arbitration.

**IT IS SO ORDERED.**

                          **s/ Christopher A. Boyko**
                          **CHRISTOPHER A. BOYKO**
                          **United States District Judge**

**Dated: May 5, 2014**